UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

R. ALEXANDER ACOSTA,                          :
SECRETARY OF LABOR, UNITED STATES   : CIVIL ACTION NO. 3:17-CV-1992
DEPARTMENT OF LABOR,                      : (JUDGE MARIANI)
                                                              :
            Plaintiff,                                    :
                                                              :
      v.                                                   :
                                                              :
REVOLUTIONARY HOME HEALTH, INC.,    :
JENNIFER FELDRA, individually, and as    :
Owner and corporate officer of the          :
aforementioned corporation; and             :
KATHLEEN EVANINA, individually, and as  :
Owner and corporate officer of the          :
aforementioned corporation.                    :
                                                              :
            Defendants.                               :

## MEMORANDUM OPINION
## I. INTRODUCTION

Defendant's Motion for Summary Judgment (Doc. 31) and Secretary's Motion for

Partial Summary Judgment (Doc. 34) are pending before the Court.  In the underlying

action, Plaintiff alleges that Defendants violated the overtime and recordkeeping provisions

of the Fair Labor Standards Act ("FLSA" "Act"), 29 U.S.C. § 201, *et seq.*  (Doc. 14 ¶¶ 7-9,

11-12.)  Defendants seek summary judgment on the Fair Labor Standards Act claims

lodged against them in the Amended Complaint (Doc. 14); Plaintiff seeks summary

judgment in his favor on the substantive FLSA claims and requests that the Court find that

the substantive violations were willful and warrant an award of liquidated damages and injunctive relief.  (Doc. 34 at 2.)  For the reasons that follow, the Court will deny Defendant's Motion for Summary Judgment (Doc. 31) and will deny the Secretary's Motion for Partial Summary Judgment (Doc. 34) in part and grant it in part.

## II. STATEMENT OF UNDISPUTED FACTS[1]

Defendant Revolutionary Home Health, Inc., provides skilled in-home nursing and health care services to patients residing in counties throughout the Commonwealth of Pennsylvania.  (Doc. 14 ¶ 2.)  Defendants Jennifer Feldra and Kathleen Evanina are co-owners of the corporation.  (*Id.* ¶¶ 3, 4.)  Each is a fifty percent owner.  (Doc. 35 ¶ 7; Doc. 41 ¶ 7.)  Ms. Evanina holds the title of chief executive officer with duties which include staff training, hiring, ensuring that the business complies with laws and regulations, directly supervising senior staff, and setting policies and pay rates for employees in general.  (*Id.*)  Ms. Feldra is the chief financial officer of the company who oversees all financial aspects of the business.  (Doc. 35 ¶ 8; Doc. 41 ¶ 8.)  She also signs contracts on behalf of the company, hires employees, and helps to set pay rates for employees.  (*Id.*)

---

[1] In addition to undisputed factual averments contained in the Amended Complaint (Doc. 14), the Court references the following documents in this section of the Memorandum Opinion: Defendant's [sic] Statement of Undisputed Material Facts Pursuant to LR 56.1 (Doc. 32); Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (ECF No. 32) (Doc. 38); Plaintiff's Undisputed Facts in Support of Summary Judgment (Doc. 35); and Answer to Plaintiff's Statement of Undisputed Material Facts Pursuant to LR 56.1 (Doc. 41).

The parties provide citation to the record in support of their factual assertions.  The Court has verified citations but omits them from the recitation set out in the text.

The Department of Labor ("DOL") investigated Defendants for Fair Labor Standards Act compliance.  (Doc. 32 ¶ 1; Doc. 38 ¶ 1.)  The investigation began in 2016.  (Doc. 32 ¶ 4; Doc. 38 ¶ 4.)  Jason Mowday was the sole investigator, and Alan Davis, Assistant District Director, reviewed Mr. Mowday's investigative file.  (Doc. 32 ¶ 3; Doc. 38 ¶ 3.)  Mr. Mowday prepared an investigative file, including a Compliance Action Report dated August 23, 2017.  (Doc. 32 ¶ 7; Doc. 38 ¶ 7.)

During the relevant time period, clinical staff were responsible for scheduling their patients for the following day.  (Doc. 35 ¶ 12; Doc. 41 ¶ 12.)  They would receive a list of patients from their office, determine the order in which to see the patients, and contact each patient to schedule the appointment.  (*Id.*)  During the relevant time period, the typical productivity goal was six patient units per day, or 30 per week.  (Doc. 35 ¶ 16; Doc. 41 ¶ 16.)

Ms. Feldra acknowledged that references to "hours" in Defendants' payroll records did not reflect actual hours worked but if "80" was referenced in the salary row, that could mean that the clinical employee reached their productivity goal of 30 units in both weeks.  (Doc. 35 ¶ 26; Doc. 41 ¶ 26.)  The following exchange occurred at Ms. Feldra's deposition: "Q: [I]t looks like it says hours but it doesn't look like it means hours A: Not all the time." (*Id.*)  She also stated that on other lines of the payroll, "hours" could actually refer to mileage driven and paid as a bonus.  (*Id.*)  It is possible to estimate the daily stopping time by

looking at the summary of the daily activity report ("DAR") and determining the time of the last appointment of the day.  (Doc. 35 ¶ 32; Doc. 41 ¶ 32.)

The Compliance Action Report prepared by Mr. Mowday includes a narrative in which he concludes that 55 employees are owed back pay for overtime.  (Doc. 32 ¶ 8; Doc. 38 ¶ 8.)  The DOL investigative file contains a list of the 55 employees and the back pay amounts which the investigator believes are due.  (Doc. 32 ¶ 9; Doc. 38 ¶ 9.)   A list of the same 55 employees is attached to plaintiff's Amended Complaint as Schedule A.  (Doc. 32 ¶ 10; Doc. 38 ¶ 10.)  The DOL investigative file contains "Interview Statements" of 26 employees, 22 of which were conducted by telephone and 4 of which were conducted in person.  (Doc. 32 ¶ 11; Doc. 38 ¶ 11.)  All of the interview statements are redacted and none identify the employees interviewed or their dates of employment.  (*Id.*)  Mr. Mowday in part based his conclusions regarding hours worked on these 26 interviews and in part on employer's records.  (*Id.*)

In preparing his report, Mr. Mowday testified that he concluded RNs who were working on a fee basis were not exempt employees, concluding that the work of RNs was not unique.  (Doc. 32 ¶ 15; Doc. 38 ¶ 15.)  He also testified to the following: he is not a nurse and could not state what the general duties of a nurse are; he did not review any patient charts; no nurses he interviewed said they were performing repetitive tasks; he agrees RN work required advanced knowledge and is predominately intellectual; he agrees RNs possess advanced scientific knowledge; and he agrees that RNs acquired their

knowledge via education and training.  (Doc. 32 ¶¶ 16-23; Doc. 38 ¶¶ 16-23.)  As for LPNs, Mr. Mowday agrees they can be paid per visit.  (Doc. 32 ¶ 24; Doc. 38 ¶ 24.)  He also testified that because Shawna Norton (assistant to the company's financial officer) told him in their first meeting that clinicians "clock in and out with the patients" he concluded that they were not paid for time between visits.  (Doc. 32 ¶ 26; Doc. 38 ¶ 26.)  The nurses interviewed by Mr. Mowday told him they were required by Revolutionary to make contemporaneous notes.  (Doc. 32 ¶ 29; Doc. 38 ¶ 29.)

Mr. Mowday gave every employee 2 hours of uncompensated time a day totaling ten to fourteen hours a week.  (Doc. 32 ¶ 32; Doc. 38 ¶ 32.)  He said he arrived at an average of two hours based upon the average of interviews of those who had such complaints, and, for those who were interviewed and had complaints but gave no time, he used one hour. (Doc. 32 ¶ 34; Doc. 38 ¶ 34.)

On July 18, 2017, Mr. Mowday provided defendants with a Summary of Unpaid Wages and demanded that Defendants pay $234,304.72.  (Doc. 32 ¶ 41; Doc. 38 ¶ 11.) The Summary of Unpaid Wages included a total of $45,710.12, attributable to Shaya Davis, who Mowday now concedes was a salaried exempt employee.  (Doc. 32 ¶ 42; Doc. 38 ¶ 42.)  Defendants deposed employees Emily Gillen, Donald Schoeffling, and Toni Miller who had the second, third and fourth highest amounts of back wages calculated by Wage and Hour before the commencement of the litigation.  (Doc. 32 ¶ 43; Doc. 38 ¶ 43.)

Donald Schoeffling was deposed on December 13, 2018. (Doc. 32 ¶ 44; Doc. 38 ¶ 44.) Mr. Shoeffling testified that he had never met or spoken to defense counsel prior to his deposition. (*Id.*) He began his employment as an LPN with Revolutionary Home Health on July 16, 2016. (Doc. 32 ¶ 45; Doc. 38 ¶ 45.) He has no complaints about his pay. (Doc. 32 ¶ 46; Doc. 38 ¶ 46.) He has worked overtime for Revolutionary Home Health. (Doc. 32 ¶ 47; Doc. 38 ¶ 47.) Mr. Shoeffling has productivity goals of seeing 30 patients per week. (Doc. 32 ¶ 48; Doc. 38 ¶ 48.) He is sometimes on call and is compensated for that time. (Doc. 32 ¶ 51; Doc. 38 ¶ 51.) He completes all of his charting in the confines of his 8-hour workday. (Doc. 32 ¶ 52; Doc. 38 ¶ 52.) Mr. Shoeffling's scheduling is populated on his company issued tablet and he is able to complete all of his scheduling related duties, including patient calls, in the confines of his 8-hour workday. (Doc. 32 ¶ 53; Doc. 38 ¶ 53.) He knows he can enter non-visit notes in the Daily Activity Report (DAR) contained in the Electronic Medical Record (EMR) to record time. (Doc. 32 ¶ 54; Doc. 38 ¶ 54.)

Emily Gillen was deposed on December 13, 2018. (Doc. 32 ¶ 55; Doc. 38 ¶ 55.) She has worked as an LPN with Revolutionary Home Health since January 2014. (*Id.*) Ms. Gillen testified that she had never met or spoken to defense counsel prior to her deposition. (*Id.*) She has never had any complaints about her pay with Revolutionary Home Health. (Doc. 32 ¶ 56; Doc. 38 ¶ 56.) She is aware of the 30 patients per week productivity requirement and usually sees 6 to 7 patients a day. (Doc. 32 ¶ 57; Doc. 38 ¶ 57.) Ms. Gillen is paid more for seeing in excess of 30 patients per week, even if she works less than

40 hours per week.  (Doc. 32 ¶ 59; Doc. 38 ¶ 59.)  She can see 30 patients in 22 hours

(Doc. 32 ¶ 60; Doc. 38 ¶ 60.)   She would be paid for her actual hours if she saw less than

30 patients in a given week.  (Doc. 32 ¶ 61; Doc. 38 ¶ 61.)  She is aware that she can enter

work performed outside her 8-hour day in the DAR contained in the EMR.  (Doc. 32 ¶ 64;

Doc. 38 ¶ 64.)

Toni Miller was deposed on December 13, 2018.  (Doc. 32 ¶ 65; Doc. 38 ¶ 65.)   She

has been a full time RN with Revolutionary Home Health since January of 2016.  (*Id.*)  She

testified that she had never met or spoken to defense counsel prior to her deposition (Doc.

32 ¶ 66; Doc. 38 ¶ 66.)  She started as a per diem employee in 2015.  (Doc. 32 ¶ 67; Doc.

38 ¶ 67.)  Ms. Miller has never complained about not being correctly paid for overtime.

(Doc. 32 ¶ 73; Doc. 38 ¶ 73.)  She is able to do all of her charting within the confines of her

8-hour workday.  (Doc. 32 ¶ 74; Doc. 38 ¶ 74.)  Ms. Miller understood that she could enter

work performed outside her 8-hour day in the DAR contained in the EMR.  (Doc. 32 ¶ 76;

Doc. 38 ¶ 76.)

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "only where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549

F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute

is material only if it might affect the outcome of the suit under governing law." *Kaucher v.*

*County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990).  Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.  *Anderson,* 477 U.S. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  *Big Apple BMW,*

*Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson,* 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

In this case, the parties have filed cross-motions for summary judgment. The standard of review applicable to cross-motions for summary judgment is no different, requiring this Court to assess "each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule

56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir.

2016) (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed.

2016)).  According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to
> summary judgment, and the making of such inherently contradictory claims
> does not constitute an agreement that if one is rejected the other is necessarily
> justified or that the losing party waives judicial consideration and determination
> whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008).  A district court should

consider cross-motions for summary judgment separately and apply the appropriate burden

of production to each motion.  *Id.*  Each movant must show that no genuine issue of material

fact exists; if both parties fail to carry their respective burdens, the Court must deny the

motions. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008).  When

reviewing each cross-motion, the Court is still bound to view the evidence in the light most

favorable to the non-movant. Fed. R. Civ. P. 56; *United States v. Hall*, 730 F. Supp. 646,

648 (M.D. Pa. 1990).

## IV.  ANALYSIS

In the Amended Complaint, Plaintiff asserts that Defendants violated the FLSA in two

ways: 1) Defendants violated Sections 7 and 15(a)(2) of the FLSA "by employing their

employees . . . for workweeks longer than those prescribed in section 7 . . . without

compensating [them] for employment in excess of the prescribed hours at rates not less

than one and one-half times their regular rates" (Doc. 14 ¶ 7); and 2) Defendants violated

the provisions of sections 11(c) and 15(a)(5) of the Act in that they "failed to make, keep, and preserve adequate records of their employees, which they maintained as prescribed by the regulations issues and found at 29 C.F.R. Part 516" (*id.* ¶ 11).  Defendants deny these allegations.  (Doc. 15 ¶¶ 7, 11.)

"The Fair Labor Standards Act is part of the large body of humanitarian and remedial legislation enacted during the Great Depression, and has been liberally interpreted. . . . [It is not to] be interpreted or applied in a narrow, grudging manner." *Brock v. Richardson*, 812 F.2d 121, 123-24 (3d Cir. 1987) (internal quotation omitted).  The Third Circuit Court of Appeals explained the purpose of the Act and overtime provisions in *Parker v. NutriSystems, Inc.*, 620 F.3d 274 (3d Cir. 2010):

> Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.' " *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (quoting 29 U.S.C. § 202(a)). The Act was designed "to ensure that each employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of overwork as well as underpay.' " *Id.* (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).
>
> The legislative history of the overtime compensation provisions of the FLSA reveal a threefold purpose underlying them: (1) to prevent workers who, perhaps out of desperation, are willing to work abnormally long hours from taking jobs away from workers who prefer shorter hours, including union members; (2) to spread available work among a larger number of workers and thereby reduce unemployment; and (3) to compensate overtime workers for the increased risk of workplace accidents they might face from exhaustion or overexertion. *Mechmet,* 825 F.2d at 1175–76 (7th Cir.1987) (citing H.R.Rep. No. 1452, 75th Cong., 1st Sess. (1937); S.Rep. No. 884, 75th Cong., 1st Sess. (1937)).

*Parker,* 620 F.3d at 279.

Section 7 of the Act, 29 U.S.C. § 207, provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Section 15(a)(2) of the Act, 29 U.S.C. § 215(a)(2) states that it is unlawful for any person to violate section 7 of the Act.

Penalties for violations of section 207 of the Act include the following: an employer who violates the provisions of section 207 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Section 11(c) of the Act, 29 U.S.C. § 211(c), provides as follows:

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. § 211(c). Section 15(a)(5) of the Act states that it is unlawful for any person

to violate any of the provisions of section 211(c), . . . or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect.

29 U.S.C. § 215(a)(5).

The regulations address what records are to be kept by employers.  29 C.F.R. § 516.2 provides details as to necessary records for employees subject to minimum wage and overtime provisions, including for those employees covered under section 7(a) of the Act.

(a) Items required. Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each employee to whom section 6 or both sections 6 and 7(a) of the Act apply:

(1) Name in full, as used for Social Security recordkeeping purposes, and on the same record, the employee's identifying symbol or number if such is used in place of name on any time, work, or payroll records,

(2) Home address, including zip code,

(3) Date of birth, if under 19,

(4) Sex and occupation in which employed (sex may be indicated by use of the prefixes Mr., Mrs., Miss., or Ms.) (Employee's sex identification is related to the equal pay provisions of the Act which are administered by the Equal Employment Opportunity Commission. Other equal pay recordkeeping requirements are contained in 29 CFR part 1620.)

(5) Time of day and day of week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period). If the employee is part of a workforce or employed in or by an establishment all of whose workers have a workweek beginning at the same time on the same day, a single notation of the time of the day and beginning day of the workweek for the whole workforce or establishment will suffice,

(6)(i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data),

(7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),

(8) Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,

(9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section,

(10) Total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts, and nature of the items which make up the total additions and deductions,

(11) Total wages paid each pay period,

(12) Date of payment and the pay period covered by payment.

29 C.F.R. § 516.2(a).

In the Amended Complaint (Doc. 14), Plaintiff asserts the following as to the overtime pay violation:

8. During the time period from at least May 27, 2014, through at least May 26, 2017, Defendants willfully failed to compensate certain employees, including certain registered nurses and licensed practical nurses, who worked over 40 hours in a workweek, one and one-half times their regular rate for these

14

overtime hours. These employees were paid on a per-patient visit basis and therefore received no premium for hours worked over 40, even though their hours per week frequently exceeded 40.

9. Further, these employees were not compensated for work they performed other than visiting patients, such as time spent traveling between patient visits, attending weekly staff meetings, making supply and laboratory runs, speaking on the phone with patients during on-call duty, and completing patient charts and paperwork. That uncompensated work frequently resulted in employees working up to approximately 50 hours per workweek. The employees did not receive time and one-half their regular rate for those overtime hours, even though Defendant Feldra admitted that she was aware that time spent traveling between patient visits is compensable.

(Doc. 14 ¶¶ 8, 9.)  Plaintiff then cites, by way of example, to pay records of three employees where the employee worked over forty hours in a week and was not properly compensated for that time.  (*Id.* ¶ 10.)

Defendants' records show that one employee, Imelda Fernandez, worked at least 49 hours during the workweek ending on February 20, 2015, 55.5 hours during the workweek ending on June 19, 2015, and 45.5 hours during the workweek ending on October 21, 2016. However, Ms. Fernandez was not paid an overtime premium for any of those overtime hours worked. Defendants' records show that another employee, Toni Miller, worked at least 43.5 hours during the workweek ending on March 18, 2016, 52 hours during the workweek ending on August 5, 2016, and 49.75 hours during the workweek ending on October 21, 2016. However, Ms. Miller was not paid an overtime premium for any of those overtime hours worked. Finally, Defendants' records show that another employee, Donald Schoeffling, worked at least 44.75 hours during the work week ending on October 14, 2016, 63.25 hours during the workweek ending on December 9, 2016, and 48.5 hours during the workweek ending on April 28, 2017. However, Mr. Schoeffling was not paid an overtime premium for any of those overtime hours worked.

(Doc. 14 ¶ 10.)

As to the recordkeeping violation, Plaintiff, by way of example, states that

Defendants failed to record the accurate amount of hours actually worked by certain of its employees each workday and total hours worked each workweek. 29 C.F.R. § 516.2(a).  In addition, Defendants have altered certain employee time records by deleting patient visits and have shredded time cards after time was entered into the electronic system.[2]

(Doc. 14 ¶ 12.)

In their Answer to the Amended Complaint, Defendants deny the averments set out in each of the paragraphs cited above.  (Doc. 15 ¶¶ 8-12.)

Within the legal framework identified, the Court will now assess the parties' pending motions regarding the FLSA violations alleged in the Amended Complaint.

A. <u>Defendants' Motion</u>

*1. Employee Compensation*

In their motion for summary judgment, Defendants maintain that allegations they did not properly pay overtime are false.  (See, e.g., Doc. 31 ¶¶ 6, 14.)  Plaintiff responds that Defendants have not come forward with evidence showing they are entitled to summary judgment on this issue.  (Doc. 37 at 16-17.)  The Court concludes that Defendants have not satisfied their burden of showing there is no genuine issue of material fact regarding overtime compensation and, therefore, they are not entitled to summary judgment on this claim.

---

[2] At his deposition, Mr. Mowday stated that his investigation was inconclusive as to the alteration of time records.  (Ex. A, Mowday Dep. 50:20-51:21 (Doc. 32-1 at 14)).

Before proceeding with analysis of the parties' arguments, the Court will outline Defendants' *alleged* method of compensating clinicians as explained by CEO Evanina, CFO Feldra, and other administrators. The Court provides this recitation ONLY to provide a context within which to consider the parties' arguments since their extensive disagreements on facts presented in Defendants' Statement of Undisputed Material Facts make it difficult to piece together any meaningful framework for discussion.  (*Compare* Doc. 32 *with* Doc. 38.) The Court does not assess the merits of the assertions contained in the following summary, many of which are denied by Plaintiff (*id.*):  clinicians' pay is based on an hourly wage (Doc. 32-4 at 36); clinicians have a productivity goal of attaining thirty units per week and a normal patient visit is one unit with certain more extensive visits being more than one unit (*id.* at 38-39); a normal patient visit is estimated to take between thirty and forty-five minutes (*id.* at 36); if an employee completes thirty units, the employee is paid for forty hours that week (Doc. 32-3 at 4); if an employee does not reach the thirty-unit goal in a week, pay is based on the actual hours worked or prorated on a per unit basis (Doc. 32-4 at 42, 43)[3]; the start time and end time are calculated based on those times recorded in the employee's daily activity report ("DAR") (*id.*);  to calculate the actual hours worked, someone manually adds up the hours after calculating them based on the start and stop times in the DAR (Doc. 32-6

---

[3] Ms. Evanina testified to both.  (Ex. D., Evanina Dep. 42:3-9, 43:14-18 (Doc. 32-4 at 42, 43).)  The prorated unit basis of pay is consistent with Defendants' written policy.  (*See* Doc 38-6 at 1 ¶ 8.)

at 6); if an employee goes over thirty units in a week, the employee is paid extra (Doc. 32-4 at 43).

Turning now to the parties' arguments on the compensation issue, Defendants first cite to specific examples of employees whom they claim were properly compensated for overtime work.  (Doc. 33 at 7.)  Pointing to the testimony of David Schoeffling and Toni Miller, two of the exemplar employees identified in Plaintiff's Amended Complaint (Doc. 14 ¶ 10), Defendants aver that both testified that they were paid one and one-half times their hourly rate for hours worked over 40 in a given week.  (Doc. 33 at 7 (citing Doc. 32 ¶¶ 43-54, 65-76).)  They also cite the Declarations of Kathleen Evanina and Jennifer Feldra as evidence that another exemplar, Imelda Fernandez (Doc. 14 ¶ 10), was paid overtime for all examples cited in the Amended Complaint.  (Doc. 33 at 8 (citing Ex. K, Decs. of Evanina and Feldra (Doc. 32-11)).)  Defendants' final example is Emily Gillen, an employee whom they deposed and who is allegedly owed $10,737.34 in back wages and liquidated damages.  (Doc. 33 at 8.)  Defendants cite to Ms. Gillen's testimony that she was paid overtime wages of one and one-half times her hourly rate for hours worked over forty in a given week.  (*Id.* (Doc. 32 ¶¶ 55-64).)

Defendants also assert in their supporting brief that Mr. Mowday, "misunderstood the Defendants [sic] policies and as a result arrived at clearly erroneous conclusions regarding how employees were paid."  (Doc. 33 at 9.)  In support of this assertion, Defendants point to the depositions of Kathleen Evanina, Jennifer Feldra, Shawna Norton, and Sarah Kain

where they testified that clinicians are on the clock from the time they open their first visit until they close their last visit—testimony which contradicts Mr. Mowday's conclusion that clinicians were not paid for the time between patient visits.  (*Id.*at 13 (citing Ex. C, Kain Dep. 39:1-20 (Doc. 32-3 at 6); Ex. D, Evanina Dep. 58:2-59:12 (Doc. 32-4 at 58-59)); Ex. E, Feldra Dep. 38:4 (Doc. 32-5 at 38); Ex. F, Norton Dep. 38:17 (Doc. 32-6 at 6)).)  Defendants further point to Mr. Mowday's deposition testimony that he would agree that the clinicians were paid for their hours between visits if the testimony of these individuals were true.  (*Id.* at 9-10 (citing Ex. A, Mowday Dep. 39:19-40:7 (Doc. 32-1 at 11)).)  Finally, Defendants contend that Plaintiff is in possession of no contrary facts.  (*Id.* at 10.)

In their reply brief, Defendants state that "[e]mployees who worked over 40 hours were paid by the hour, or given bonus productivity units, which ever [sic] was greater." (Doc. 39 at 2 (citing Ex. C, Kain Dep. 27:18 (Doc. 32-3); Ex. D, Evanina Dep. 69:2-10,72:24-23 (Doc. 32-4); Ex. E, Feldra Dep. 58:16-25 (Doc. 32-5); Ex. H, Schoeffling Dep. 12:19 (Doc. 32-8); Ex. J, Miller Dep. 13:1-11 (Doc. 32-10)).)

Plaintiff maintains that Defendants do not actually argue or explain why their method of paying employees complies with the FLSA.  (Doc. 37 at 14.)  Plaintiff contends that the assertions of "handpicked employees" does not show they did not violate the Act, and Defendants do not address the actual violation, i.e., the failure to pay 1.5 times the regular rate for all hours over forty worked in a week.  (*Id.*)

Plaintiff specifically criticizes Defendants' reliance on the testimony proffered, asserting that the employees did not understand what overtime is: "Defendants have misled these employees into thinking that bonus payments are overtime, when all three clearly testified that the payments are clearly on a per-patient basis and without regard to hours worked." (Doc. 37 at 16.)  Plaintiff cites the following exchange which occurred at Mr. Schoeffling's deposition:

> Q. What happens if you see 33 patients in the course of a week?
>
> A. We get overtime for the additional patients.
>
> Q. And would you get that, you called it overtime, would you get that extra pay even if it was not in excess of 40 hours?
>
> A. Yes.

((Doc. 37 at 16 (citing Doc. 38-10, Schoeffling Dep. 18:14-21).)  Plaintiff also notes that Ms. Miller called unit bonus payments paid without regard to hours worked "overtime" when she stated at her deposition "[y]ou met your 30, and then . . . you saw three extra patients, then that is your extra. . . . . That is your overtime." (Doc. 37 at 16 (citing Doc. 38-11, Miller Dep. 20:16-20).)  Plaintiff undermines Defendants' citation to Ms. Gillen's testimony in that she stated she was not sure if she was paid overtime, but said she was paid more per patient for additional patients.  (Doc. 37 at 16 (citing Gillen Dep. 12:21-13:5 (Doc. 38-13)).)

Plaintiff further asserts that bonus payments should have been included in the regular rate paid to employees because the bonus payments are not excluded from the definition of "regular rate" of pay set out in 29 U.S.C. § 207(e) and, while this calculation

would not increase the number of overtime hours worked, it would increase the unpaid overtime due.[4]  (Doc. 37 at 17.)

Though Defendants proffer evidence concerning pay for an employee who works more than forty hours, neither their supporting brief nor reply brief provides uncontested evidence that an employee who worked more than forty hours in a week either did receive or would receive 1.5 times the employee's regular rate for the overtime worked. When the Schoeffling, Miller, and Gillen testimony upon which Defendants base their overtime argument in their supporting brief is reviewed in context, the testimony does not support the conclusion that Defendants' method of paying employees complied with the

---

[4] Because the Court addresses the issue of whether Defendants paid employees 1.5 time their regular rate before addressing what that rate should be, the Court will not, at this juncture, further engage in a detailed analysis of the categorization of the bonus pay in this case.  However, the Court notes that it appears to fit squarely in the type of pay defined in 29 C.F.R. § 778.211 which must be included in the regular rate calculation:

> Promised bonuses not excluded. The bonus, to be excluded under section 7(e)(3)(a), must not be paid pursuant to any prior contract, agreement, or promise. For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay.

29 C.F.R. § 778.211(c).  As stated in *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945), "the regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Id.* at 425; *see also Sec'y United States Dep't of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 131 (3d Cir. 2019) (stating that *Walling's* "common sense view has never been challenged").

FLSA or that employees were paid one and one-half times their regulate rate for hours worked over forty in a given week in that the conflation of bonus units and overtime is apparent.  For example, when Ms. Miller was asked "if, within the confines of your 40 hour work week, what if you were able to see 33 patients?" and she responded "[t]hat's overtime."  (Ex. 11, Miller Dep 19:7-10 (Doc 38-11 at 5).)  To the question "what do you get for seeing those three extra patients?" she answered "[y]ou get your time-and-a-half."  (*Id.* 19:11-13.)  As Plaintiff points out, Ms.Gillen was inconclusive about her overtime pay:

> Q. Did you ever work overtime, over 40 hours?
>
> A. In the beginning, yes.
>
> Q. And when you did, were you paid at least one-and-a-half times your hourly rate for the hours you worked over 40?
>
> A. Hours over 40... that, I'm not sure.

(Ex. I, Gillen Dep. 12:18-24 (Doc. 32-9 at 4).)

Defendants' citation to the Declarations of Kathleen Evanina and Jennifer Feldra as evidence that another exemplar, Imelda Fernandez (Doc. 14 ¶ 10), was paid overtime for all examples cited in the Amended Complaint (Doc. 33 at 8 (citing Ex. K, Decs. of Evanina and Feldra (Doc. 32-11))), does not provide conclusive evidence that Defendants paid their employees 1.5 times their regular rate for hours worked over forty.  The Declarations are based on two attachments: the first appears to be Defendants' overtime calculations for the three weeks the DOL identified where Ms. Fernandez worked more than forty hours, calculations that were not of record at the time of the DOL investigation; the second is

Duplicate Pay Stubs for corresponding pay periods.  (Doc. 32-11 at 3-7.)  Because Defendants do not provide details of how their calculations correspond with the related pay stubs and because the Court is unable to independently correlate the documents proffered in support of the Declarations, the Declarations cannot be considered undisputed evidence.

Defendants' conclusory statement in their reply brief that "[e]mployees who worked over 40 hours were paid by the hour, or given bonus productivity units, which ever [sic] was greater" (Doc. 39 at 2) does not establish that employees were paid 1.5 times their regular rate for hours worked in excess of forty.  First, the Court notes that Defendants cite only deposition testimony in support of their assertion when the essential question involves a mathematical calculation involving real people and their real pay.  While not dispositive, Defendants failure to cite to any document or combination of documents showing the relevant calculations is curious.[5]  Second, as shown by the following review, the cited testimony consists primarily of hypothetical answers to hypothetical questions and assertions which exhibit confusion about Defendants' compensation practices rather than provide clarity on the payment of overtime at issue here.

The propriety of Defendants' reliance on the Kain Deposition cannot be ascertained because Defendants do not include page 27 of the Kain Deposition in their supporting exhibit.  (*See* Doc. 32-3.)

---

[5] As discussed regarding the Evanina and Feldra Declarations, calculations that do not explain how figures presented correlate to pay stubs cannot be considered definitive documentary evidence.

The Evanina Deposition excerpts cited, seen in context, do not clear up confusion between overtime and bonus pay.

Q. . . . Are you paid anything while you're on-call?

A. You're - it's part of your salary, it's part of your job.

Q. Okay. If you have to go out and make a visit does that count as a productivity unit?

A. You get paid for the visit, yes.

Q. And that's paid as part of the productivity?

A. It's paid for the time that they're there, so if they go out and they're doing on-call and it's really complicated and it takes them three hours and that puts them over 40 hours a week, they're going to get time and a half for that whole thing.

(Ex. D, Evanina Dep. 68:16-69:7 (Doc. 32-4 at 68-69).)  In Defendants' other citation to Ms. Evanina's deposition, she is responding to the question of whether she ever had an employee who complained about working more than forty hours and it was a problem because the employee was not being paid properly.  (*Id.* 70:16-19.)  The following exchange ensued:

A. I have sat down with staff members when they said that they were confused about the units. . . . So it wasn't I'm not getting paid kind of a thing, but can you explain to me like what this is.

Q. Right.

A. So - and you have a copy of one of the things that I had written out for a staff member. . . .  So basically I would sit down with them and I would say, okay so I want you to stop thinking about units for a second. This is your start time, this is your end time. This is how many hours you worked. There's your start time, your end time, how many hours you worked. . . .  And I would write down and

then I would say this is how many hours you worked this week. You worked 30 hours. And so right now you're owed 30 hours' worth of pay, but you did one, two, three, four, five, six, going down, 31, 32, 33, 34 units. Now you're going to get more. And they're like, ah, that's awesome. And you started this time and started this time. You worked 30 hours this week. . . .  You are owed 30 hours' worth of pay. . . . You did 29 units. You will be paid for the time that you worked.

Q. Thirty (30) hours?

A. Thirty (30) hours.

Q. Okay.

A. They're like, oh, it's so important to get those units in. And I said it's important to work full-time. Then I would tell them calculate it out, they worked 47 hours. . . . I would say you are going to be paid 40  hours, 7 hours of time and a half-

(*Id.* 70:20-72:23.)

Aside from the fact that Ms. Evanina's explanation is difficult to follow, it does not appear to comport with the productivity requirements and associated pay set out in the Defendants' written policy which bases pay for less than thirty units at a rate of "$18/Patient Unit," and pay for satisfying the unit requirement to the "full time salary."[6]  (Doc. 38-6 at 1 ¶¶ 5, 8.)  With these deficiencies, Ms. Evanina's testimony cannot be found to unequivocally establish that Defendants paid their clinicians overtime pay at 1.5 times the employee's regular rate.  This is particularly so in that the following exchange occurred when Ms.

---

[6] At her deposition, Ms. Evanina was asked if it was still the policy that "if you go below 30 units in a week – you'll be prorated to an $18 per patient unit."  ((Ex. D, Evanina Dep. 43:14-17 (Doc. 32-4 at 43).)  Ms. Evanina responded "[i]f that's what it says."  (*Id.* 43:18.)

Evanina was previously asked what happened if an employee went over thirty units in a given week:

> A. Then they're paid extra.
>
> Q. Okay. And how much extra are they paid?
>
> A. No idea.
>
> Q. Okay. Are they paid - is it based on the hours that they worked or something else?
>
> A. I don't want to guess.

(Ex. D, Evanina Dep. 43: 3-10 (Doc. 32-4 at 43)).)   Considering this testimony, it is difficult to discern how someone who does not know how much extra a clinician is paid for units in excess of thirty can definitively assert that a clinician is categorically paid at least 1.5 times her regular rate for hours in excess of forty in a given week.

Defendants' reliance on Ms. Feldra's testimony is similarly flawed in that she does not directly address overtime compensation at 1.5 times an employee's regular rate and she states that an employee will be paid on an hourly rather than unit basis if they do not achieve the thirty-unit requirement.   In discussing the written policy previously mentioned (Doc. 38-6), the following dialog took place:

> Q.  . . . And so on the second line here, it mentions you must complete a minimum of 30 patient units a week of patient care. So what happens if you don't complete 30 units a week?
>
> A. If they don't complete the 30 units . . . a week, then it would default to paying them for the hours that they worked.

Q. Okay. And so if those hours were more than 40, would they be paid for more than 40 hours?

A. Yes, but that wouldn't happen. It's impossible.

Q. Why is it impossible?

A. Because if somebody can't make their 30 units because they're not being efficient, we took them off of productivity and we put them back on orientation. So if they can't get their visit time to where it's - where it's within range for them to be able to complete 30 units a week - that's when it's almost like it's not the right job for them, because you have to be able to complete - there's certain - we've calculated based on the visit times when it takes nurses out in the field. And based on that information, and based on some industry standards that we've come up with, and based on what clinicians experienced when they worked at other home health companies, we came up with a system. So I understand that you're - you're  focusing on number nine, but there's what it says and then there's what we actually practice. As a general rule, if somebody wasn't making their units . . . and they were still - they weren't because it was due to the time of their visits, we would take them off of what we call productivity and we will put them back on orientation. So orientation is strictly hours. So that wouldn't matter how many visits they did in a day. They would - they would only chart their time . . . and they would turn in those time sheets to us.

(Ex. E, Feldra Dep. 58:16-60:8 (Doc. 32-5 at 58-60).)

While Defendants point to the transcript ending with Ms. Feldra's affirmative answer that an employee who went over forty hours would be paid for the overtime (Feldra Dep. 58:25), her explanation as to why that would not happen does not indicate any rate of compensation for overtime and negates any reliance on her testimony as support for the proposition that Defendants paid overtime in compliance with the FLSA.  Ms. Feldra's statement that what the Productivity Requirement policy says regarding payments for units in excess of thirty per week may not be what actually happens ("focusing on number nine,

but there's what it says and then there's what we actually practice") not only adds confusion

to the issue but serves to cast doubt on Defendants' ability to point to a coherent policy

regarding compensation for excess units or time involving more than forty hours a week.

The inability to find a clear articulation of overtime payments and policy is highlighted

by the following exchange between Ms. Feldra and Plaintiff's attorney:

> Q.  If you work more than the 30, get - get more than 30 units from the LPN,
> paragraph nine mentions that you'll - you'll be paid more than - you can be - be
> paid an additional fee. You're paid by the visit at that point. Is that correct?
>
> A. Well, you're paid what you go over, so in the instance of if you - if you were
> under your 40 hours, it would be almost like a bonus. And if you're over your
> 40 hours, it's your overtime because if a visit is between 30 to 45 minutes, $25
> is $50 an hour, which is above what time and a half would be for any of the
> LPNs working.

(Ex. E, Feldra Dep. 64:16-65:3 (Doc. 32-5 at 64-65).)  In her example, Ms. Feldra's

explanation of how the employee would be paid for hours in excess of forty is not calculated

based on 1.5 times the employee's regular rate.  Rather, she backs into the conclusion that

an LPN would be receiving 1.5 times the hourly rate based on a hypothetical where the

patient visit which was beyond forty hours in a week would be of a duration that would result

in the employee receiving 1.5 times the regular rate.  The number of variables and

unsupported assumptions in Ms. Feldra's hypothetical preclude its use as evidence that an

employee working in excess of forty hours is paid 1.5 times the individual's base pay for that

time.  Notably, Ms. Feldra's explanation does not appear to contemplate an employee's

added reimbursement for units above thirty in a given week as part of a regular rate

calculation.  *See supra* p. 20 n.4.  Nor does it show how such an overtime payment scheme

would comport with regulations that bar using fixed sums and flat rates for tasks performed

in overtime to offset overtime pay.[7]  *See* 29 C.F.R. §§ 778.310, 778.311.

Defendants also rely on the following testimony given by Mr. Shoeffling:

Q. During that period, from July of 2016 through May of 2017, did you ever work overtime?

A. Yes.

Q. And when you worked overtime, were you paid at least one-and-a-half times your hourly rate for the hours that you worked over 40 in a given week?

A. Yes, I was.

(Ex. H, Schoeffling Dep. 12:16-23 (Doc. 32-8 at 3).)  However, as previously quoted by

Plaintiff, *see supra* p. 20, overtime came up in the deposition in another context:

Q. What happens if you see 33 patients in the course of a week?

A. We get overtime for the additional patients.

Q. And would you get that, you called it overtime, would you get that extra even if it was not in excess of 40 hours?

A.  Yes.

(*Id.* at 18:14-21 (Doc. 32-8 at 5).)  Defendants do not attempt to harmonize the deposition

excerpts regarding overtime or otherwise undermine the fact that these exchanges show

that the term "overtime" was used in different ways.   Because Mr. Shoeffling referenced

---

[7] In raising this question, the Court makes no determination at this time whether the identified provisions would apply here.

"overtime" interchangeably enough with payments for units in excess of 30, his affirmative response to the question of whether he was "paid at least one-and-a-half times your hourly rate for the hours that you worked over 40 in a given week" does not show unequivocally that his payment for hours in excess of 40 comlplies with the requirements of the FLSA. This is particularly so given Ms. Feldra's explanation of overtime pay discussed above.

Ms. Miller's testimony is similarly inconclusive: she states that she was paid time-and-a-half for overtime in excess of forty hours, and she also characterizes additional payment for units in excess of thirty as "overtime" and "time-and-a-half." (Ex. J, Miller Dep. 13:1-11 (Doc. 32-10 at 4); Ex. 11, Miller Dep. 19:7-13 (Doc. 38-11 at 5).

In addition to the lack of dispositive evidence regarding overtime pay contained in the testimony proffered by Defendants, the Court finds it significant that Plaintiff's claimed overtime compensation violation is not based solely on the exemplar employees, but rather on the fifty-five current and former employees identified in Schedule A attached to the Amended Complaint.[8] (*See* Doc. 14 at 7; Doc. 14-1.)   Defendants' narrow focus is problematic from this perspective, especially in view of the numerous interviews where employees asserted that they worked more than forty hours in a week without receiving appropriate compensation for time actually worked (Doc. 32-11).   Defendants do not discuss these interviews in the compensation portion of their supporting brief and summarily

---

[8] The parties agree that one individual identified in Schedule A of the Amended Complaint, Shaya Davis, was an exempt salaried employee.  (Doc. 32 ¶ 42; Doc. 38 ¶ 42.)  Therefore, Schedule A identifies fifty-five employees due overtime compensation.

dismiss them as unsupported in the recordkeeping section of the brief.  (*See* Doc. 33 at 12.)

Defendants' statement that "every employee who testified said they were able to do those

things within the confines of their 8- hour day and that if they were not able fit a task into

their 8-hour day they could enter the activity into the DAR" (Doc. 33 at 12) does not

undermine numerous undeposed interviewees' reports that their workday exceeded eight

hours and they were not compensated for that time (*see, e.g.*, Doc. 32-13 at 3-4, 7, 9, 11,

15-16, 21, 26, 28-29).  Defendants' assertion that "the nurses interviewed by Mowday were

not able to provide any records to show they were charting at home" (Doc. 33 at 12) may

point to issues of credibility, but it does nothing at the summary judgment stage to enhance

their position that they paid overtime in compliance with the FLSA.

Finally, in the employee compensation portion of their supporting brief, Defendants

present an argument regarding between-visit pay.  (*See* Doc. 33 at 8-10.)  However, they do

not correlate a finding in their favor on this issue with any aspect of overtime pay.  Though

they present evidence that clinicians were paid for the time between patient visits, they do

not explain how this fact, if true, would indicate as a matter of law that all employees were

compensated accurately and adequately for the hours worked, particularly that an employee

who exceeded forty hours was paid time-and-a-half for the excess hours.

In sum, a thorough review of the evidence upon which Defendants rely to support

their assertion that they are entitled to summary judgment on Plaintiff's claim that they did

not properly pay overtime under the FLSA does not show that there are no issues of

material fact on this claim.  Not only does the testimony cited by Defendants fail to support

an irrefutable conclusion that Defendants paid their employees 1.5 times their regular rate

for overtime, but evidence of record which Defendants did not meaningfully refute, including

the employee interviews conducted by Mr. Mowday, precludes broad application of

statements which may be deemed supportive of Defendants' position.

## 2.  Recordkeeping

Defendants maintain that their records contain all information required under the

relevant regulation.  (Doc. 33 at 11.)  Plaintiff responds that that Defendants' records do not

satisfy three requirements set out in the relevant regulation.  (Doc. 37 at 22.)  The Court

concludes Defendants have not shown entitlement to summary judgment on the basis

claimed.

In support of their position that they have not violated the FLSA's recordkeeping

provisions, Defendants cite to testimony that clinicians are on the clock from the time they

open their first visit until they close their last visit and the electronic medical records and

daily activity reports tracked all hours worked.  (*Id.* at 11-12 (citations omitted).)  They also

cite to testimony that employees knew how to enter non-visit activities, they were able to

complete all activities within the confines of their 8-hour day, if they were not able to fit a

task into their 8-hour day they could enter the activity into the DAR, and interviewees who

said they charted from home were not able to provide records to show that they had done

so.  (*Id.* at 12 (citations omitted).)  Finally, they assert that although Mr. Mowday concluded

that each employee was owed two hours per day for the activities for which they were not paid, there was no factual basis for him to reach that conclusion.  (*Id.*)

Plaintiff responds that Defendants' records are fundamentally deficient because they do not contain the required information, i.e., hours worked per day and per week, and pay by week in violation of 29 C.F.R. §516.2(a)(7), (8), and (9) which, as set out above,  provide that the employer must maintain payroll or other records which contain the following information and data regarding each employee:

> (7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a "workday" is any fixed period of 24 consecutive hours and a "workweek" is any fixed and regularly recurring period of 7 consecutive workdays),
>
> (8) Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation,
>
> (9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section[.]

29 C.F.R. § 516.2(a)(7), (8), and (9).  Plaintiff adds that the only reason that some of this information exists is because it can be extrapolated from electronic medical records that show when employees visited patients.  (Doc. 37 at 22 (citations omitted).)

Defendants' citations regarding clinicians being on the clock from the time they open their first visit until they close their last (Doc. 33 at 11) does not show that hours worked each workday and workweek are calculated as per the relevant regulation in that the testimony does not definitively address work performed outside that time period.  The fact

that employees know how to enter non-visit activities and work performed outside the 8-hour workday (*see* Doc. 33 at 12) does not mean that they did so.  Notably, numerous statements of fact upon which Defendants rely are disputed by Plaintiff.  For example, Defendants cite their assertion that Ms. Gillen stated that she was able to complete all of her scheduling duties, including patient calls, in the confines of her 8-hour workday the majority of the time (Doc. 33 at 12 (citing Doc. 32 ¶¶ 62, 63)), but Plaintiff denies this assertion, stating that Ms. Gillen testified that she has also charted from home (Doc. 38 ¶¶ 62, 63).  The parties similarly disagree regarding Ms. Miller's testimony.  (*Compare* Doc. 33 at 12 (citing Doc. 32 ¶ 75)) *with* Doc. 38 ¶ 75.)

As discussed above, the fact that Ms. Gillen and Ms. Miller are exemplar employees, two of the fifty-five identified in Schedule A of the Amended Complaint (Doc. 14-1), their testimony, no matter how favorable it may be to Defendants' position, cannot alone satisfy Defendants' burden of showing they are entitled to summary judgment.  Defendants' failure to squarely address contrary evidence further diminishes their claimed entitlement to judgment in their favor as a matter of law.

In the recordkeeping section of their brief, Plaintiff mounts numerous criticisms of Defendants' records regarding hours worked and compensation for those hours.  (Doc. 37 at 22-25.)  Plaintiff points to Defendants' concession that employees worked overtime "but have not a single record of paying actual overtime."  (Doc. 37 at 24 (citing Doc. 33 at 7-8; Doc. 38 ¶¶ 13, 27, 47).)  Citations to Plaintiff's response to Defendants' statement of facts in

turn rely in part on Mr. Mowday's Declaration (Doc. 38 ¶¶ 27, 82) in which he states the

following:

> 3. During my investigation I reviewed documents provided by Revolutionary
> Home Health, Inc., including a summary of what I understand to have been
> "daily activity reports" that showed the times that employees of Revolutionary
> Home Health started and ended patient visits.

> 4. My understanding is that the aforementioned employees travelled to patient
> homes and between patient homes each day.  In order to determine how many
> hours employees worked each day and each week, I counted time starting with
> the beginning of the first patient visit and lasting to the end of the last patient
> visit each day. If there was more than 1.5 hours between the end of one patient
> visit and the start of the next patient visit, then I did not count that as working
> time.

> 6. Additionally, because employees told me that they had additional duties after
> completing their patient visits at the end of the day, I added an estimate of
> additional time based on employee interviews.

> 7. The summary of the daily activity report showed that counting from the start
> of the first visit in a workday to the end of the last visit of the day as I described
> in paragraph 5, employees worked more than 40 hours in a workweek in 317
> individual workweeks, before adding any estimated additional time as
> described in paragraph 6.

(Ex. 11, Mowday Dec. at 1-2 (Doc. 38-12.)

Defendants attempt to undermine implications of Mr. Mowday's conclusions

regarding hours worked for their recordkeeping practices in part on the interviewees' lack of

records to support their claims that they were charting from home.  (*See* Doc. 33 at 12

(citing Ex. A, Mowday Dep. 45:16 (Doc. 32-1 at 12)).)  As with the interview findings

discussed in the context of the compensation claim addressed above, *see supra* pp. 30-31,

interview evidence cannot be summarily disregarded.  Rather than showing that Defendants

are entitled to summary judgment on the FLSA recordkeeping claim, the disagreements about what Mr. Mowday learned in employee interviews and how he used that information in arriving at his conclusions about daily hours worked (*see, e.g.,* Ex. A, Mowday Dep. 52:17-53:20 (Doc. 32-1 at 14)) point to issues of material fact which cannot be decided at this stage of the proceedings.

Because hours worked must be manually extrapolated from DARs (Ex. F, Norton Dep. 38:14-39:4, 40:23-41:7 (Doc. 32-6 at 6)) and because the accuracy of those DARs is at issue, Defendants have not shown as a matter of law that they complied with the regulatory requirement that they maintain records which tracked the "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7). While it may be that Defendants could theoretically keep track of hours worked in a given week, whether they did so in accordance with the Act is another question.

Further, Defendants do not show how they complied with other regulatory provisions, i.e., that they maintained records that showed the "[t]otal daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation," and the"[t]otal premium pay for overtime hours, the latter being an amount that "excludes the straight-time earnings for overtime hours recorded." 29 C.F.R. § 516.2(a)(8), and (9). Notably, Defendants do not directly address the recordkeeping claim in their reply brief. (*See* Doc. 39.) Thus, Defendants do not refute Plaintiff's assertion that there is not a single record of paying overtime (Doc. 37 at 24 (citing

Doc. 38 ¶ 82 (citing Ex. 1, Revolutionary Home Health Duplicate Pay Stubs (Doc. 38-1))),
yet employees testified to having worked in excess of 40 hours (Ex. H, Schoeffling Dep.
12:19-23 (Doc. 32-8 at 3); Ex. J, Miller Dep. 13:1-8 (Doc. 32-10 at 4)), and numerous
interviewees said the same (Doc. 32-13).

Based on the foregoing discussion, the Court concludes that Defendants have not
satisfied their burden of showing that there are no issues of material fact and they are
entitled to judgment as a matter of law on Plaintiff's claims that they did not pay overtime in
compliance with the FLSA and they did not keep appropriate records pursuant to the
relevant regulation.  Therefore, Defendants' Motion for Summary Judgment (Doc. 31) will be
denied.

## A.  Plaintiff's Motion

### 1.  Employee Compensation

In his supporting brief, Plaintiff states that "Defendants violated section 7 of the FLSA
by failing to pay employees an overtime premium for overtime hours worked, instead paying
based on their productivity system without accounting for overtime work." (Doc. 36 at 20.)
Defendant responds that "[c]linical employees who worked overtime were paid at least one
and one half times their regular hourly rate." (Doc. 42 at 3 (citation omitted).)   The Court
concludes that Plaintiff has not shown there is no disputed issue of material fact regarding
Defendants' payment of overtime.

In support of the claimed entitlement to summary judgment on the compensation violation, Plaintiff cites to numerous statements contained in "Plaintiff's Undisputed Facts in Support of Motion for Summary Judgment." (Doc. 35.)

> Defendants have acknowledged that they never paid overtime. Undisputed Facts ¶ 36. Defendants' records, reconstructed by Secretary, show that some workers regularly worked more than 40 hours in a workweek. Undisputed Facts ¶ 27.
>
> Upon determining the starting and stopping times and hours worked under a methodology that makes assumptions favorable to the employer, there are literally hundreds of weeks where employees worked more than 40 hours in a week. Undisputed Facts ¶ 27. Employees further reported that they worked additional time, mostly in the evenings, to contact patients, schedule appointments, and finish charting. Undisputed Facts ¶¶ 30, 33. Defendants' policies required employees to do this work in the evenings after their patient visits were completed. Undisputed Facts ¶ 34. All of this time should have been compensated at one-and-a-half each employee's regular rate every time an employee went over 40 hours on the workweek, yet none of it was, since Defendants have not paid overtime. Undisputed Facts ¶ 36.
>
> Since Defendants did not actually keep records of hours worked by day and by week, or pay by week, these violations are based on reconstruction of the payroll. Undisputed Facts ¶¶ 27, 30-33. . . .
>
> . . . It is clear that overtime work was performed based on review of clinical records, employee statements, Defendants' payroll records, and Defendants' policies. Undisputed Facts ¶¶ 27, 30-35, 37-40, 47. It is equally clear that no overtime premiums were paid. Undisputed Facts ¶¶ 36, 40.

(Doc. 36 at 20-22.)

Plaintiff supports his reconstruction of the payroll records upon which the violations are based on the premise that Defendants did not "keep records of hours worked by day and by week, or pay by week." (*Id.* at 21 (citing Undisputed Facts ¶¶ 27, 30-33).) Plaintiff

avers that "[p]ayroll reconstruction is a long-accepted practice in FLSA litigation because employers are responsible for keeping payroll records, not employees."  (*Id.* (citing *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687 (1946); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) ("If the employer fails to produce adequate records about the employee's wages and hours, the court may then award damages to the employee even though the result may only be approximate"); and *Martin v. Selker Bros.*, 949 F.2d 1293, 1297-98 (3d Cir. 1991) (in the absence of adequate employer records, the Third Circuit allows the employee or the Secretary to submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred); *De Rose v. Eastern Plastics, Inc.*, 134 F. Supp. 805, 807-09, 12  (W.D. Pa. 1955) (employee's statement permitted a reasonable inference of damages)).)  Plaintiff adds that

> [d]amages can be awarded to unknown non-testifying employees. *See Brennan v. Parnham*, 366 F. Supp. 1014, 1026 (W.D. Pa. 1973) (awarding damages to unknown employees and crediting compliance officer's computations and calculations).
>
> Where an employer has not kept records, "the solution is not to penalize the employees by denying recovery based on an inability to prove the extent of undercompensated work." *Selker Bros., 949 F.2d at 1297* (citing *Mt. Clemons*, 328 U.S. at 687-88). Therefore the burden is on Defendants to produce evidence that they have actually paid overtime premiums properly. *Mt. Clemons*, 328 U.S. at 687-88.

(Doc. 36 at 22.)

According to Plaintiff, Defendants' payments to employees for making more than 30 patient visits a week, when made, do not constitute premium pay for overtime work.  (Doc.

36 at 23.)  Plaintiff further asserts that "[i]n order for those payments to qualify, Defendants would have needed to keep track of the time worked and be able to show that employees were actually getting time and a half." (*Id.* (citing 29 U.S.C. § 207(e)(5), 29 C.F.R. §§ 778.200, 778.201, 778.202; *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 372 (S.D.N.Y. 2014) (discussing regulations and concluding that payments made without tracking time are not overtime)).)  Plaintiff concludes that Defendants cannot make the necessary showing because they did not make the required records.  (*Id.* (citing Undisputed Facts ¶¶ 28-29 (Doc. 35)).)

As previously set out in the margin, *see supra* pp. 20-21 n.4, 29 C.F.R. § 778.211 explains the type of bonus pay which must be included in the regular rate calculation:

> Promised bonuses not excluded. The bonus, to be excluded under section 7(e)(3)(a), must not be paid pursuant to any prior contract, agreement, or promise. For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Most attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category; in such circumstances they must be included in the regular rate of pay.

29 C.F.R. § 778.211(c).  In *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945), the Supreme Court stated that "the regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Id.* at 425; *see also Sec'y United States Dep't of Labor v.*

*Bristol Excavating, Inc.*, 935 F.3d 122, 131 (3d Cir. 2019) (stating that *Walling's* "common sense view has never been challenged").

Based on Defendants' explanation of the pay system used and relevant authority, for present purposes the Court agrees that bonus pay for units in excess of 30 in a given week would be included in the employee's regular rate of pay.  The Court also finds that *if* Defendants did not keep track of all hours worked, payroll reconstruction is appropriate to show violations of the FLSA and damages may be awarded accordingly.  However, these determinations do not support Plaintiff's assertion that summary judgment is appropriately granted on the overtime compensation claim.  Rather, on the current record, the Court finds, for two main reasons, that Plaintiff has not shown there is no issue of material fact on the claim that Defendants did not pay 1.5 times an employee's regular rate for hours over 40.

First, Plaintiff's reliance on facts set out in Plaintiff's Undisputed Facts in Support of Motion for Summary Judgment (Doc. 35) does not hold up when Defendants' responses to those statements are reviewed.  Defendants deny all but one paragraph cited and they deny the portion of the paragraph upon which Plaintiff presumably relies, i.e., the assertion in paragraph 32 that "it is clear that clinical employees worked more than 40 hours in many workweeks" using information from which it is possible to estimate an employee's daily starting and stopping time on the DAR.  (Doc. 35 ¶ 32.)  Defendants agree that the information exists to calculate the hours of its clinicians and that they use the information to do so, but Defendants deny that Plaintiff's conclusions and opinions are supported by

undisputed material facts and further state that, because Plaintiff's factual assertion "does not tell us which employees or workweeks they are referring to, . . . it [is] impossible to respond." (Doc. 41 ¶ 32.)

Second, Plaintiff's illustration regarding an exemplar employee's overtime pay does not conclusively establish that the individual was not paid 1.5 times her regular rate or that all employees were not paid 1.5 times their regular rate if they worked over forty hours in a given week. To factually illustrate the bonus payment and overtime aspects of the compensation claim, in his supporting brief Plaintiff points to employee Imelda Fernandez for whom the DAR calculation shows a total of 45.5 hours in the week ending October 21, 2016. (Doc. 36 at 24.) Noting that Defendants adopted Plaintiff's conclusion as to the amount of time worked (*id.* at 24 n.3 (citing Doc. 32-11)), Plaintiff sets out a calculation of the pay Ms. Fernandez should have received for the week she worked overtime. (*Id.*) Ms. Fernandez was paid a total of $2,246.77 for the two-week pay period that included the week ending October 21, 2016 (the week the DARs showed that she worked 45.5 hours between the first and last visits of the day). (*Id.* (citing Ex. 12, Duplicate Pay Stub, (Doc. 35-12 at 362)).) This amount includes the bonus pay that is included in the regular rate. (Doc. 36 at 24 n.2.) Plaintiff then calculates that "[t]o determine the overtime due, divide $1,123.39 by 45.5 hours, for an hourly rate of $24.69. Ms. Fernandez is then due an additional $67.90 in half-time premium pay ($24.69/2= 12.35 X 5.5 hours = $67.90)." (Doc. 36 at 24.)

While the Court does not challenge Plaintiff's math as far as it goes, the calculation does not, as presented, demonstrate that Plaintiff was owed more than the $2,246.77 she was paid for the two-week pay period that included the week ending October 21, 2016. Nor does Plaintiff show that there are no disputed issues of material fact on the compensation claim in that Defendants assert in the document cited by Plaintiff (Doc. 36 at 24 (citing Doc. 32-11)) that overtime wages were paid in full for the week ending October 21, 2016 (Doc. 32-11 at 3), and Plaintiff does not demonstrate or specifically argue otherwise. As discussed in the context of Defendants' motion, *see supra* pp. 22-23, there is a basis upon which to discount Defendants' Declarations and calculations (Doc. 32-11), but discounting the evidence due to lack of adequate support does not equate with finding that Plaintiff has shown Defendants' conclusion that Ms. Fernandez was properly paid overtime is false. Because Plaintiff's argument does not present a basis to find that the Evanina and Feldra Declarations are false, the calculation presented by Plaintiff points to material facts which are in dispute.

Plaintiff's assertion that the Fernandez example does not take into account additional hours that he alleges are due employees based on wholly unrecorded work time points to another matter which the Court cannot decide based on the current record. As discussed regarding Defendants' motion, *see supra* pp. 30-31, the basis for the unrecorded worktime assertions is, in large part, Mr. Mowday's interviews with twenty-six employees, some of whom stated that they worked hours which were not recorded in the DARs. (*See* Doc. 35-

14, Doc. 32-13 ¶ 5.)  Defendants deny the employees' statements and assert their

unreliability based on conflicting evidence from some employees and the lack of supportive

records for the additional time.  (*See, e.g.*, Doc. 33 at 12.)  Therefore, as determined in the

context of Defendants' motion, a proper assessment of unrecorded time cannot be

conducted on the present record.  *See supra* p. 34.

Similarly, Plaintiff's contention that "Defendants would owe overtime on hundreds of

occasions based on hours shown from their clinical records" (Doc. 36 at 25-26 (citing

Undisputed Facts ¶¶ 27, 39)) is not based on undisputed facts.  Both paragraphs 27 and 39

of Plaintiff's Undisputed Facts in Support of Motion for Summary Judgment (Doc. 35) are

denied by Defendants with contradictory citations to the record either set out in the specific

response or by reference to a related response.  (*Compare* Doc. 35 ¶¶ 27, 39 *with* Doc. 41

¶¶ 27, 39.)  The documents upon which Plaintiff relies in support of the assertion regarding

the amount of overtime owed based on clinical records are the Duplicate Payroll Stubs

(Doc. 35-12), Jason Mowday's Declaration (Doc. 35-14), the Declaration of Robin Magnot

(Doc. 35-11), and Jason Mowday's Deposition (Doc. 35-13 at 53-55).  A review of these

records shows that the documents proffered as support for the "undisputed" proposition fail

to show that Plaintiff is entitled to summary judgment on the basis that Defendants violated

the FLSA by not paying 1.5 times an employee's regular rate for overtime worked.

First, Plaintiff's general citation to the 914-page Duplicate Pay Stub exhibit may show

that payroll records did not identify hours worked over 40 in a week as "overtime" but this

fact does not necessarily mean that an employee did not receive the appropriate pay for hours worked over 40 since the records show compensation for work performed in excess of eighty hours in a two-week pay period. (*See, e.g.,* Doc. 35-12 at 362.)   In his Declaration, Mr. Mowday states that the DAR summaries showed that "employees worked more than 40 hours in a workweek in 317 individual workweeks, before adding any estimated additional time [for duties completed at the end of the day]." (Doc. 35-14 ¶ 7.) Mr. Mowday's statement and evidence derived from the DARs may establish that employees sometimes worked more than 40 hours, but it does not necessarily follow that they were not properly compensated for that time.

Plaintiff's assertion that Defendants' employees regularly worked many more hours than reported on the DARs (Doc. 35 ¶ 39) is based in part on Mr. Mowday's testimony related to information gleaned from employee interviews. (*Id.;* Doc. 35-15 at 53-55).)  As discussed previously, conflicting interviewee information and matters of credibility which arise in assessing the interviewee evidence and Defendants' related averments are not the province of the Court on summary judgment.

Finally, Plaintiff's reliance on the Declaration of Robin Magnot (Doc. 35 ¶ 39 (citing Doc. 35-11)), is disputed by Defendants based in part on the Declaration of Kathleen Evanina (Doc. 41 ¶¶ 34, 39 (citing Ex. N, Evanina Dec. (Doc. 41-1))) who reviewed Ms. Magnot's Declaration and challenged her assertions about charting from home based upon an assessment of relevant reports, and challenged her assertions (and DOL conclusions)

that she was not properly paid overtime based on payroll and DAR records (Doc. 41-1). Although Plaintiff attempts to undermine Ms. Evanina's Declaration in his reply brief (Doc. 43 at 10-11), his argument highlights the matters of credibility and disputed material facts related to the issue of appropriate overtime compensation under the FLSA.

Because the Court finds that Plaintiff has not shown there are no issues of material facts in dispute regarding the overtime compensation for Defendants' employees, Plaintiff is not entitled to summary judgment on the claim that Defendants violated the FLSA section 7 by failing to pay overtime for hours worked in excess of forty per week.  Therefore, the Court will deny Plaintiff's motion for summary judgment as to this claim.

## B. Recordkeeping

Plaintiff contends that Defendants violated the FLSA's recordkeeping requirements in several ways.  (Doc. 36 at 18-20.)  Defendants respond that their records contain all required information.  (Doc. 33 at 11.)  The Court concludes that Defendants have not shown there is a disputed issue of fact regarding their compliance with 29 C.F.R. § 516.2(a)(8) and (9), and, therefore, Plaintiff is entitled to summary judgment on this aspect of the recordkeeping claim.

Plaintiff specifically asserts that

Defendants failed to record the hours worked per day and week, the starting and stopping time of employees, and the amounts paid to employees by week. The Secretary has sought these records and they were never provided. Undisputed Facts ¶ 29. Defendants did not "record" starting and stopping times, for example, or the total number of hours worked per day. Those times and totals had to be reconstructed from clinical records. Undisputed Facts ¶ 31-33.

> Daily starting and stopping times are required to be kept under 29 C.F.R. §
> 516.6(a)(1). Total hours worked per day and week are to be kept per 29 C.F.R.
> § 516.2(a)(7). . . .
>
> . . . .
>
> . . . Defendants further failed to record the amounts paid to employees
> each week. No document exists that shows pay per week; Defendants' payroll
> only shows pay on a two-week basis. Undisputed Facts ¶ 28. 29 C.F.R. §
> 516.2(8) and (9) require employers to maintain records of total weekly straight
> time and overtime earnings.

(Doc. 36 at 19-20.)

Defendants refute Plaintiff's assertions in part.  (Doc. 42 at 9-10.)  They claim that

records and testimony confirm that they kept all required information and "[t]he fact that the

EMR particularly the daily activity reports . . . tracked all hours was also confirmed." (*Id.* at

9.)

As discussed previously, whether the DARs accurately tracked starting and stopping

times as well as all hours worked are questions which cannot be answered on the current

record.  *See, e.g., supra* pp. 33-35.  Thus, without more, Plaintiff's criticism of Defendants'

recordkeeping on the basis that "clinical records when employees saw their first and last

patients of the day do not reflect all working time" (Doc. 36 at 19) does not show entitlement

to relief as a matter of law.

29 C.F.R. § 516.2(a)(7) provides that the employer must keep payroll or other

records which contain information and data as to hours worked each workday and total

hours worked in each workweek.  Plaintiff has not shown that DARs are not "other records"

under § 516.2(a).  Moreover, as discussed regarding Defendants' motion and in the

previous section of this Memorandum Opinion, whether the DARs can be considered

accurate records of hours worked in a given day or week involves determinations regarding

the accuracy and credibility of interviewee testimony related to working, but not recording,

time in addition to that tracked in the DARs, *see supra* pp. 32-35.  Insofar as these are

determinations which cannot be made by the Court at this stage of the proceedings, in the

present context Plaintiff presents no argument or evidence which indicates that the Court

should alter the previous determination on the issue.

While Plaintiff has not shown that Defendants violated 29 C.F.R. § 516.2(a)(7) as a

matter of law, whether Defendants' recordkeeping practices violate § 516.2 (a)(8) and (9) is

a different question.  Plaintiffs assert that "Defendants further failed to record the amounts

paid to employees each week. No document exists that shows pay per week; Defendants'

payroll only shows pay on a two-week basis."  (Doc. 36 at 20.)  Subsections (8) and (9)

require that an employer keep the following records:

> (8) Total daily or weekly straight-time earnings or wages due for hours
> worked during the workday or workweek, exclusive of premium overtime
> compensation,
>
> (9) Total premium pay for overtime hours. This amount excludes the
> straight-time earnings for overtime hours recorded under paragraph (a)(8)
> of this section[.]

29 C.F.R. § 516.2(a)(8), and (9).  Importantly, Defendants do not respond to this aspect of

Plaintiff's recordkeeping violation claim as they are required to do to defeat summary

judgment. Unlike the calculation of daily and weekly hours worked which are potentially

tracked in the DARs, no payroll or other records show daily or weekly straight-time earnings

or the total premium pay for overtime hours.  Because Defendants have provided no

evidence from which the Court could conclude that their recordkeeping practices satisfy the

requirements of 29 C.F.R. § 516.2(a)(8), and (9), Plaintiff is entitled to summary judgment

on this aspect of its recordkeeping claim.

Although Plaintiff does not specifically address what relief is appropriate for

recordkeeping violations,[9] Plaintiff seeks injunctive relief pursuant to 29 U.S.C. § 217.  (Doc.

36 at 31.)  Section 217 provides that "[t]he district courts . . . shall have jurisdiction, for

cause shown, to restrain violations of section 215 of this title."  As set out above, a

recordkeeping violation pursuant to 29 U.S.C. § 211(c) which includes the regulatory

violations at issue here is unlawful pursuant to 29 U.S.C. § 215(a)(5).  *See supra* pp. 12-13.

Therefore, Plaintiff is entitled to an injunction enjoining Defendants from future violations of

Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c), 215(a)(5), the issuing of such

injunction not subjecting Defendants to any penalty but requiring them to obey the law and

comply with the recordkeeping requirements set out in 29 C.F.R. § 516.2(a)(8) and (9).

---

[9] Plaintiff's request for liquidated damages goes to an overtime violation of section 7 of the Act. See supra p. 12; 29 U.S.C. §§ 207(a)(1), 216(b).

## V.  CONCLUSION

For the reasons discussed above, the Court will deny Defendant's Motion for Summary Judgment (Doc. 31) and will deny the Secretary's Motion for Partial Summary Judgment (Doc. 34) in part and grant it in part. The Secretary's motion is granted as to the claimed recordkeeping violation based on failure to comply with 29 C.F.R. § 516.2(a)(8) and (9) and is denied in all other respects.  The Court will enjoin Defendants from future violations of Sections 11(c) and 15(a)(5) of the Act, 29 U.S.C. §§ 211(c), 215(a)(5), and will specifically require Defendants to comply with the recordkeeping requirements set out in 29 C.F.R. § 516.2(a)(8) and (9).  An appropriate Order is filed simultaneously with this Memorandum Opinion.

_s/ Robert D. Mariani_____
Robert D. Mariani
United States District Judge